**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RITE AID CORPORATION,** | : | |
| | : | **CIVIL ACTION NO. 1:03-CV-1801** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **LIBERTY MUTUAL FIRE** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM AND ORDER**

THE BACKGROUND OF THE ORDER IS AS FOLLOWS:

     This action for declaratory judgment involves Plaintiff Rite Aid's claim for insurance coverage of an employment related claim that was resolved through arbitration.  Rite Aid was represented at arbitration by the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden").[1]  (T.R. 33.)[2]  On November 14, 2002, an arbitration panel issued a ruling awarding Kaplan $15,396,466, plus interest, but finding for Rite Aid on Kaplan's claims for pre-employment misrepresentations and injury to reputation.  Rite Aid incurred over $2,000,000 in fees and costs in connection with the arbitration.  After Plaintiff and Kaplan entered a confidential settlement agreement, Plaintiff sought reimbursement from Liberty Mutual for the

---

    [1] Plaintiff was also represented by the law firm of Ballard Spahr Andrews & Ingersoll, LLP ("Ballard") in connection with the arbitration and seeks reimbursement for $53,949.28 charged in connection therewith.  For purposes of brevity, the Court will refer to all legal fees being sought for reimbursement by Plaintiff as simply the "legal fees."

    [2] For purposes of brevity, the trial transcript will be referred to as "T.R.", followed by the page number.

costs incurred in defending itself during arbitration.[3]  This Court granted in part Plaintiff's

motion for summary judgment, holding that Defendants had a duty to defend Plaintiff in the

Kaplan arbitration and that Defendant breached its duty in refusing to reimburse Plaintiff for

costs incurred in defense of the Kaplan claims.

On July 28 and 29, 2005, the parties litigated the issue of damages at a bench trial.

Plaintiff presented testimony regarding the nature and extent of legal services provided to

Plaintiff.  Defendant countered with but one witness, Susan Cooper.  Defendant offered Ms.

Cooper as an expert in the area of legal auditing.  Plaintiff objects to the testimony of Ms.

Cooper and to the admission of Exhibits 218, 219, and 220 proffered by Defendant at trial.[4]

I.   **Discussion**

A.   **Expert Opinion**

Rule 702 of the Federal Rules of Evidence provides that:

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Under Rule 702, the Court must ensure that the proffered expert's testimony

---

[3] Plaintiff also brought claims against Zurich American Insurance and Federal Insurance company, but these defendants were subsequently dismissed from the lawsuit pursuant to settlements.

[4] Because Plaintiff first raised its objections in its pretrial memorandum rather than in a motion in limine, the issue was heard at bench trial of this matter, with the Court receiving the disputed testimony and reserving ruling pending briefing.

is both relevant and reliable.  <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147-49 (1999)

(citing <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 589 (1993)) (expanding the

court's gatekeeping function to all expert testimony).  "In short, an expert must have the

requisite qualifications, reliability, and fit."  <u>Jaasma v. Shell Oil Co.</u>, 412 F.3d 501, 513 (3d Cir.

2005) (internal quotation omitted).  In assessing reliability, the District Court is guided by a

number of factors, such as:

> (1) whether a method consists of testable hypotheses; (2) whether
> the method has been subject to peer review; (3) the known or
> potential rate of error; (4) the existence and maintenance of
> standards controlling the techniques's operation; (5) whether the
> method is generally accepted; (6) the relationship of the technique
> to methods which have been established to be reliable; (7) the
> qualifications of the expert witness based on the methodology
> employed; and (8) the non-judicial uses to which the method has
> been put.  In assessing reliability, a court need not rely exclusively
> on this list and may take into account any other relevant factors,
> however, this list provides an ample starting point.

<u>Calhoun v. Yamaha Motor Corp.</u>, 350 F.3d 316, 321 (3d Cir. 2003) (internal citation omitted).

The trial court is granted "considerable leeway in deciding in a particular case how to go about

determining whether particular expert testimony is reliable."  <u>Kumho Tire Co.</u>, 526 U.S. at 152.

To fit, the expert testimony must be "'relevant for the purposes of the case and must assist the

trier of fact.'"  <u>Calhoun</u>, 350 F.3d at 321 (quoting <u>Schneider v. Fried</u>, 320 F.3d 396, 405 (3d Cir.

2003)).  "'[N]othing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court

to admit opinion evidence that is connected to the existing data only by the <u>ipse dixit</u> of the

expert.'"  <u>Kumho Tire</u>, 526 U.S. at 157 (quoting <u>General Electric Co. v. Joiner</u>, 522 U.S. 136,

146 (1997)).

 Defendant seeks to proffer Ms. Cooper as an expert in the field of "legal auditing" and

have the Court consider Ms. Cooper's testimony as to the reasonableness of the legal fees in this case.  (T.R. 216-19.)  At trial, Ms. Cooper opined that multiple charges by Skadden and Ballard were unreasonable and recommended reducing the reimbursable fees by more than fifty-percent. (T.R. 275; Def. Ex. 220 at 27.)  In particular, Ms. Cooper recommended excluding from reimbursement, inter alia:  all of the fees charged prior to Liberty Mutual receiving tender on August 27, 2001; all fees charged by Ballard; all fees billed by Skadden's summer clerks; all fees billed by Skadden "transient billers"; and all Lexis Nexis research charges.  (T.R. 263-66, 283-88, 291-97.)  Ms. Cooper also found unreasonable the amount of time Skadden attorneys spent in depositions, in conferences, and working on certain dispositive motions.  (T.R. 278-79, 297, 312, 361.)  Defendant also seeks to admit into evidence an expert report and two audit summaries detailing Ms. Cooper's recommended reductions to the legal fees.  (Def. Exs. 218-220.)

      1.    <u>Qualifications as Expert</u>

      The Court looks first to Ms. Cooper's qualifications.  Ms. Cooper received a Bachelor of Arts degree in accounting from the online university, National University, and a Juris Doctorate from Western State University College of Law.  (Def. Ex. 217.)  Ms. Cooper is an attorney licensed in California, but she is not a Certified Public Accountant.  (T.R. 172, 206.)  Currently Ms. Cooper works for Legal Cost Consultants, Inc. as a "legal fee auditor", where she "review[s] the fees of counsel in certain matters, review[s] the invoices, review[s] the work product, and then render[s] an opinion as to the reasonableness of the fees."  (T.R. 168.)  Prior to her employment with Legal Cost Consultants, Ms. Cooper freelanced as a "litigation management consultant", performing legal fee audits and bill reviews.  (Def. Ex. 217.)  From February 1993

4

to January 2000, Ms. Cooper worked for Golden Eagle Insurance Co., reviewing legal bills for compliance with the insurance company's guidelines. (T.R. 178; Def. Ex. 217, 235.) From May 1992 to January 1993, Ms. Cooper was employed as an associate with the law firm of Lorber, Greenfield, Blick & Volk, focusing on insurance coverage cases and reviewing legal bills for insurance company clients. (T.R. 168, 213-14.) However, Ms. Cooper did not have any experience as a practicing lawyer until 2001, when she was employed by the small law firm of Clark and Associates from July 2001 to July 2004. (T.R. 215; Def. Ex. 217.) During her three year tenure at Clark and Associates, Ms. Cooper focused exclusively on construction defect litigation. (T.R. 178.)

After careful review of the record and the testimony at trial, the Court finds that Ms. Cooper does not have the knowledge, expertise, or training to testify as to the reasonableness of the legal fees at issue. Ms. Cooper has no specialized education or certification in the legal auditing field, her purported area of expertise. At trial, Ms. Cooper admitted that legal auditing is not recognized as a profession by any state, has no professional organizations, and is subject to no regulatory body. (T.R. 208, 217-19.) Ms. Cooper knew of no university or college which offers a degree in legal auditing or authoritative published standards that would apply to the legal auditing field. (T.R. 206-07.) Moreover, Ms. Cooper has spent only a small fraction of her legal career as a litigator. (T.R. 214-16.) During that brief period, Ms. Cooper never represented a client in a matter as large and complex as the Kaplan arbitration. (T.R. 216.) Ms. Cooper has neither the certification to qualify as an expert in accounting nor the litigation experience to opine generally on the reasonableness of the legal fees sub judice.

2.      <u>Reliability of Methods</u>

Further, the Court finds that the principles and methods used by Ms. Cooper in her

analysis of the legal fees do not have the requisite reliability under Rule 702.  Unlike Certified

Public Accountants, "legal auditors" have no standards for the Court to examine for reliability,

potential rate of error, or general acceptance.  Rather, Ms. Cooper based the opinions in her

testimony and report upon a so-called "reasonableness standard", which she fashioned from a

mixture of bar opinions, case law, industry billing guidelines, articles, the American Bar

Association code of ethics for lawyers, and two books written by Professor William Ross of

Samford University, Cumberland School of Law, in Birmingham, Alabama.  (T.R. 200-01.)

Although Ms. Cooper alleged at trial that most "legal auditors" would utilize a reasonableness

standard very close to her own, she admitted that no specific set of standards or guidelines exists

within the legal auditing field, and therefore no standards that could be used to verify the

reliability of her testimony.  (T.R. 211.)

Throughout her testimony, Ms. Cooper articulated no standards that she used when

evaluating the legal fees beyond a mere <u>ipse</u> <u>dixit</u> statement that her opinions were based upon a

"reasonableness standard" formed from her years of experience in the field of legal auditing.  For

example, in response to Ms. Cooper's opinion that more than 150 hours of research was

excessive, the Court inquired:

> The Court:     [I]s there a standard for making these reductions, where
> does it come from, is it random, is it arbitrary, is it on a
> case-by-case basis, and is there any real support for it?
>
> Ms. Cooper:   It's on a case-by-case basis. And, no, again, there isn't any
> formula for it . . . .  Part of my analysis in this case was that
> the Skadden firm, with their expertise in all of the issues
> that were involved in this case, would have handled these

> issues many times before . . . and would have a database
> where they could go to from previous motion or previous
> research done . . . and not reinvent the wheel and start from
> scratch, which . . . 600 hours of research, almost four
> months of solid research, would indicate to me that they're
> starting from scratch and reinventing the wheel.

The Court:   But to get to the number of 75 percent [reduction of the
             research hours billed], it's really just a guess?  I mean, it
             could have just as fairly been 85 percent or 60 percent?

Ms. Cooper:  I tried to find a reasonable amount of hours, and I thought
             150 was a reasonable amount of hours.

(T.R. 353-354.)  Ms. Cooper offered no objective reasoning as to why 150 hours represented a

reasonable amount of research time.  Neither Ms. Cooper's testimony at trial nor her expert

report included an examination of the legal issues that arose during the arbitration or an

explanation as to why the issues did not warrant the billed research time.[5]  Rather, it appears that

Ms. Cooper merely took an arbitrary 25% of the hours billed and declared the reduced amount

reasonable based upon her own understanding of the rigors of litigation.

　　　Ms. Cooper's testimony meets none of the indicia of reliability identified in Daubert and

Kumho Tires as relevant factors to be considered by the Court.  During her testimony, Ms.

Cooper proffered no testable methodology which she employed in forming her opinions, nor did

she tie her opinions to any standard against which an error rate could be measured and reliability

could be determined.  Further, Ms. Cooper pointed to no specific legal auditing authority as the

basis for her conclusions at trial.  Ms. Cooper's opinions appear to be the mere product of her

understanding of the law and her own opinions regarding the reasonableness of the legal fees at

---

[5] The Court notes that when asked what were the principal issues briefed in the post-trial
motions, Ms. Cooper could not recall.  (T.R. 323-24.)

issue.  Thus, the Court is presented with only Ms. Cooper's qualifications – which the Court

finds inadequate – her bald reasonableness conclusions, and her own assurance that her

methodology is reliability.  That is not enough to demonstrate Rule 702 admissibility under

Daubert.  Daubert v. Merrill Dow Pharm., Inc., 43 F.3d 1311, 1319 (9th Cir. 1995)("Daubert II");

see In re TMI Litig., 193 F.3d 613, 687 (3d Cir. 1999)(citing Daubert II approvingly).  The Court

finds nothing to differentiate a legal auditor – as defined by Ms. Cooper – from any other

attorney versed in the law and theories touching on legal fees, except that Ms. Cooper has less

litigation experience than many members of the bar.  Accordingly, the Court does not find Ms.

Cooper qualified to testify as an expert on the reasonableness or propriety of the legal fees

incurred during the Kaplan arbitration.

       3.      Relevance of Zurich Guidelines

       The Court notes that Ms. Cooper has experience in the insurance field, inviting the

question of whether her testimony might be admitted on the narrower question of whether the

challenged fees comport with the Zurich insurance company guidelines.  Plaintiff has

demonstrated that such testimony is not relevant here.  During Skadden's representation of

Plaintiff in the Kaplan arbitration, Zurich sent Skadden its billing guidelines.  (T.R. 100.)  Jay

Berke, the Skadden partner in charge of the Kaplan arbitration, testified at trial that upon receipt

of the guidelines, he informed counsel for Zurich that Skadden would "not operate, could not

operate in conformity with these guidelines, that our arrangement for representation was with

Rite Aid, and we were following our general rates and procedures . . . ."  (T.R. 101-02.)

Moreover, Defendant concedes that Ms. Cooper referenced the Zurich guidelines only in

portions of her analysis.  (T.R. 237.)  Ms. Cooper's report and the testimony at trial do not

represent her opinion of the reasonableness of the fees as defined by the framework of the Zurich guidelines, but rather as defined by Ms. Cooper's own understanding of reasonableness based upon her experience.  (T.R. 236-37.)  Accordingly, even if the Court found that Skadden was bound by the Zurich guidelines sent to them – and there is no evidence to support such a finding – Ms. Cooper's testimony would not be helpful to the Court in examining the fees within the structure of the Zurich guidelines, as these specific guidelines were merely one of many factors Ms. Cooper considered in deciding which legal fees were unreasonable.  Accordingly, Ms. Cooper's expert testimony and report are inadmissable even on the narrow issue of conformity with the Zurich guidelines.

>    **B.**      **Compilation and Summary of Data**

In the alternative, Defendant argues that Ms. Cooper's report should be admitted as a summary of data pursuant to Federal Rule of Evidence 1006.  Rule 1006 provides that when:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

Fed. R. Evid. 1006.  Defendant characterizes Ms. Cooper's report as "simply providing the trier of fact a summary of data. . . .  These 'opinions' are not opinions are all, but proper compilations and summaries of the legal fee invoices at the heart of the case."  (Doc. No. 157 at 2.)  Such a characterization strains credulity.  Although the report contains fee totals arranged by category, the report is replete with Ms. Cooper's reduction recommendations.  (Def. Ex. 220.)  Similarly, the two proffered audit summaries consist entirely of Ms. Cooper's recommended reductions subtracted from the total legal fees billed to Plaintiff.  (Def. Ex. 218-19.)  The clear substance of

these exhibits is Ms. Cooper's analysis of the legal fees and her opinions derived therefrom.  A scattering of calculation totals does not transform twenty-nine pages of otherwise inadmissable expert opinion into a compilation.  The Court does not find Exhibit 218, 219, or 220 admissible as a compilation or summary of data pursuant to Federal Rule of Evidence 1006.  Accordingly, these exhibits cannot be admitted as compilations under Rule 1006.  As Defendant fails to demonstrate the admissibility of Ms. Cooper's testimony and Exhibits 218, 219, and 220, the testimony and exhibits must be excluded.

**II.**      <u>**Order**</u>

**AND NOW**, this 24th day of February, 2006, **IT IS HEREBY ORDERED THAT**

Plaintiff's oral motion to exclude evidence is **GRANTED**.  Ms. Cooper's testimony at trial and

Defendant's Exhibits 218, 219, and 220 are **HEREBY EXCLUDED**.

**IT IS FURTHER ORDERED** that the parties shall submit post-trial briefs and findings

of facts and conclusions of law on or before March 13, 2006.

        S/ Yvette Kane
Yvette Kane
United States District Judge